**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| INTERTRUST TECHNOLOGIES CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>REGAL ENTERTAINMENT GROUP, a Delaware corporation,<br><br>Defendant. | CIVIL ACTION NO. 2:19-CV-267<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Intertrust Technologies Corporation ("Intertrust" or "Plaintiff"), by and through its undersigned counsel, complains and alleges as follows against Regal Entertainment Group ("Regal"):

### THE PARTIES

1.      Intertrust is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 920 Stewart Drive, Sunnyvale, California 94085.

2.      Upon information and belief, Regal is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 101 East Blount Avenue, Knoxville, TN 37920.  Regal also maintains places of business at 3070 N Eastman Road, Longview, TX 75605; and 1250 S SW Loop 323, Tyler, TX 75701.

### NATURE OF THE ACTION

3.      This is a civil action for infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

4.      Regal has infringed Intertrust's U.S. Patent No. 6,157,721, U.S. Patent No. 6,640,304, U.S. Patent No. 6,785,815, U.S. Patent No. 7,340,602, U.S. Patent No. 7,406,603, U.S. Patent No. 7,694,342, U.S. Patent No. 8,191,157, U.S. Patent No. 8,191,158, U.S. Patent No. 8,526,610, U.S. Patent No. 8,931,106, and U.S. Patent No. 9,569,627 (collectively, "the Asserted Patents") and continues to infringe at least U.S. Patent No. 6,785,815, U.S. Patent No. 7,340,602, U.S. Patent No. 7,406,603, U.S. Patent No. 7,694,342, U.S. Patent No. 8,526,610, U.S. Patent No. 8,931,106, and U.S. Patent No. 9,569,627.  Intertrust is the legal owner by assignment of the Asserted Patents, which were duly and legally issued by the United States Patent and Trademark Office.  Plaintiff seeks injunctive relief and monetary damages.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the subject matter of this action pursuant to the 28 U.S.C. §§ 1331 and 1338(a).

6.      Upon information and belief, this Court has personal jurisdiction over Regal in this action because Regal has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Regal would not offend traditional notions of fair play and substantial justice. Regal has committed acts of patent infringement and has regularly and systematically conducted and solicited business in this District by and through at least several theaters in this District.

7.      Venue is proper in this District under 28 U.S.C. § 1400(b) at least because Regal has committed acts of infringement in this District and has regular and established places of business in this District.  On information and belief, Regal operates movie theaters in this District, including the Regal Longview & RPX at 3070 N Eastman Road, Longview, TX 75605; and the Regal Tyler Rose at 1250 S SW Loop 323, Tyler, TX 75701.

# FACTUAL BACKGROUND

**B.**    **Intertrust's History and Innovations**

8.    Intertrust was founded in 1990.  Intertrust pioneered digital rights management and developed the architecture to create the trusted computing environment needed for commercially viable digital rights management (DRM).  Intertrust's pioneering patented technology enabled distribution of software, music, books, and video over the Internet, and provided for secure processing in a distributed environment.

9.    In addition to enabling distribution of protected digital content and software over the Internet, Intertrust's innovations have contributed to a global standard for DRM and interoperability, Marlin DRM.  Intertrust has also developed a corresponding suite of software development kits ("SDKs") and services for trusted media asset distribution, including Marlin Client and Server SDKs, Seacert Trust Services, and the Sockeye Cryptography SDK.  Content publishers, service providers, device makers, application developers, and system-on-a-chip vendors use Intertrust's Marlin and Sockeye SDKs and Seacert Services to build personalized content distribution products and services for mobile devices, broadband, and Internet TV.

10.    More recently, Intertrust invented methods and systems for protecting high-value content, such as original-release commercial motion pictures, when these content assets are distributed to exhibitors, such as commercial movie theaters.  This Intertrust technology extends the basic concepts of digital rights management and secure distributed computing to enable the levels of security required by commercial distribution of digital content in which the major studios have typically invested tens of millions of dollars.  The incentives to breach the security of these high-value content assets, the increasing sophistication of hackers, and the potential cost-savings to the cinema industry from digital distribution made Intertrust's new technology important and valuable.

11.     Today, Intertrust's culture of innovation continues.  Intertrust focuses on the research and development of new technologies in the areas of electronic trust management, privacy protection, database management and governance, and secure media distribution.

C.     **Intertrust's Asserted Patents**

12.     Intertrust's asserted patents provide detailed teaching of a security architecture that has been used since 2009 by the cinema industry to securely distribute original-release and other high-value content in digital form.

D.     **Regal's Infringing Technology**

13.     This Intertrust technology was adopted by the cinema industry through specifications developed and promulgated by an organization named Digital Cinema Initiatives (DCI).

14.     The original DCI specification was released in 2005.  Widespread distribution of feature films in digital format followed a few years later, and almost all feature films are now distributed digitally, using the DCI specification.

15.     Regal infringes Intertrust's asserted patents through its use of DCI-compliant equipment suites to show movies and other DCI-compliant content in the movie theaters that it owns and operates.

16.     The DCI-compliant equipment suite provides content protection and digital rights management for the content that is shown in such movie theaters.

17.     The DCI-compliant equipment suite receives a digital bit stream that comprises both the contents of the Digital Cinema Package (DCP) and the Key Delivery Message (KDM).

18.     The DCP comprises encrypted digital content and a Composition Play List (CPL). The digital content is the movie itself – the video and audio tracks that make up the movie that is seen in the movie theater.  The CPL is the recipe for the movie in its contracted format – the CPL can combine a large number of different audio and video tracks for a particular screening in a

particular market, including different combinations of audio in different languages, video with scene variations, and other variations.

19.     The KDM is a digitally signed secure container.  The KDM contains encrypted content keys for a CPL, usage parameters for the content keys that comprise temporal, content, and equipment rules for the use of the content keys, and the Trusted Device List (TDL).

20.     An Image Media Block (IMB) in the DCI-compliant equipment suite comprises a Security Manager, a Media Decryptor, and a Forensic Marker.

21.     If the DCI-compliant equipment suite comprises a linked projector rather than a projector physically integrated to the IMB, the IMB also includes a Link Encryptor.

22.     The IMB is a Secure Processing Block that includes a private key for identification of the IMB.  The IMB checks the signature of the KDM, opens the KDM upon successful verification of the signature, and enforces certain governance conditions conveyed in the KDM and DCP, and, if a request to play a movie is within the scope of the governance, uses the IMB private key to decrypt the content keys.

23.     If the governance conditions associated with each of the content keys are met, then the decrypted content keys are sent by the Security Manager of the IMB to the Media Decryptor, where the keys will be used to decrypt the content.  The content will then be then watermarked in the Forensic Marker.  If there is a link between the IMB and the Projector, the Link Encryptor will then encrypt the content for decryption at the projector, where the content is projected onto the screen in the movie theater.

24.     Regal uses the technology of the Asserted Patents in its operation of movie theaters.  The Asserted Patents provide the technology necessary for the movie studios or other content providers to trust that the movie theaters will only use the content for authorized showings and that the movie theaters will not breach the security of the digital copies that have been entrusted to them.

**FIRST CAUSE OF ACTION**
**Infringement of Patent No. 6,157,721**

25.     Plaintiff re-alleges and incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

26.     Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 6,157,721 ("the '721 patent"), titled "Systems and methods using cryptography to protect secure computing environments," duly and legally issued by the United States Patent and Trademark Office on December 5, 2000, including the right to bring this suit for damages.  A true and correct copy of the '721 patent is attached hereto as Exhibit A.

27.     Before its expiration, the '721 patent was valid and enforceable.

28.     Regal has directly infringed the '721 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that practice one or more claims of the '721 patent, including but not limited to DCI-compliant equipment suites, and components thereof, and performing services such as updating the software and/or firmware operating in the IMB of DCI-compliant equipment suites (herein the "Infringing Products and Services").

29.     As a non-limiting example, Regal has infringed claim 9 of the '721 patent.  Claim 9 claims as follows:

A method of distinguishing between trusted and untrusted load modules comprising:

(a) receiving a load module,

(b) determining whether the load module has an associated digital signature,

(c) if the load module has an associated digital signature, authenticating the digital signature using at least one public key secured behind a tamper resistant barrier and therefore hidden from the user; and

(d) conditionally executing the load module based at least in part on the results of authenticating step (c).

30.     On information and belief Regal has infringed at least claim 9 of the '721 patent through its updating the software and/or firmware operating in the IMB of a DCI-compliant equipment suite to show movies and other DCI-compliant content in its movie theaters, insofar as, on information and belief, all limitations of this claim correspond to elements in the process for upgrading the secure software and/or firmware of such DCI-compliant equipment suites.  On information and belief, Regal receives updates for the software and/or firmware operating in the IMB of the DCI-compliant equipment suite.  On information and belief, as part of the software update and/or secure boot process, the DCI-compliant equipment suite locates and loads a digital signature that is associated with the software; authenticates in a secured manner that signature using a public key; and, if the authentication is successful, performs the software update.

31.     Regal has had actual knowledge of both Intertrust's rights in the '721 patent and details of Regal's infringement of the '721 patent because Intertrust brought the '721 patent to Regal's attention before the filing date of this Complaint, at least by on or about April, 2018.

32.     Regal is not and has never been licensed or otherwise authorized by Intertrust to practice, the claims of the '721 patent.

33.     By reason of Regal's infringing activities, Intertrust has suffered substantial damages in an amount to be proven at trial.  But for Regal's infringement of the '721 patent, Intertrust would have provided Regal with the patented Intertrust technology that Regal needed to implement the Infringing Products and Services and/or licensed the '721 patent to Regal so that Regal could implement these products and services.  As a result of Regal's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Regal, but in no event less than a reasonable royalty.

## SECOND CAUSE OF ACTION
### Infringement of Patent No. 6,640,304

34.     Plaintiff re-alleges and incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

35.     Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 6,640,304 ("the '304 patent"), titled "Systems and methods for secure transaction management and electronic rights protection," duly and legally issued by the United States Patent and Trademark Office on October 28, 2003, including the right to bring this suit for injunctive relief and damages.  A true and correct copy of the '304 patent is attached hereto as Exhibit B.

36.     Before its expiration, the '304 patent was valid and enforceable.

37.     Regal has directly infringed the '304 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that practice one or more claims of the '304 patent, including but not limited to DCI-compliant equipment suites, and components thereof, and providing services such as showing movies using DCI-compliant equipment suites (herein the "Infringing Products and Services").

38.     As a non-limiting example, Regal has infringed claim 24 of the '304 patent. Claim 24 claims as follows:

A method for monitoring use of a digital file at a computing system, the method comprising:

receiving the digital file;

receiving a first entity's control information separately from the digital file;

using the first entity's control information to govern, at least in part, a use of the digital file at the computing system; and

reporting information relating to the use of the digital file to the first entity;

wherein at least one aspect of the computing system is designed to impede the ability of a user of the computing system to tamper with at least one aspect of the computing system's performance of one or more of said using and reporting steps.

39.    Regal has infringed at least claim 24 of the '304 patent through its use of a DCI-compliant equipment suite to show movies and other DCI-compliant content in its movie theaters, insofar as all limitations of this claim correspond to elements in the showing of movies in a movie theater using a DCI-compliant equipment suite.  The DCP and the KDM are received separately.  Log reports are generated and transmitted to rights owners and others in the content distribution vertical channel.

40.    Regal has had actual knowledge of both Intertrust's rights in the '304 patent and details of Regal's infringement of the '304 patent because Intertrust brought the '304 patent to Regal's attention before the filing date of this Complaint, at least by on or about April, 2018.

41.    Regal is not and has never been licensed or otherwise authorized by Intertrust to practice, the claims of the '304 patent.

42.    By reason of Regal's infringing activities, Intertrust has suffered substantial damages in an amount to be proven at trial.  But for Regal's infringement of the '304 patent, Intertrust would have provided Regal with the patented Intertrust technology that Regal needed to implement the Infringing Products and Services and/or licensed the '304 patent to Regal so that Regal could implement these products and services.  As a result of Regal's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Regal, but in no event less than a reasonable royalty.

### THIRD CAUSE OF ACTION
**Infringement of Patent No. 6,785,815**

43.    Plaintiff re-alleges and incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

44.    Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 6,785,815 ("the '815 patent"), titled "Methods and systems for encoding and protecting data using digital signature and watermarking techniques," duly and legally issued by the United States Patent and Trademark Office on August 31, 2004, including

the right to bring this suit for injunctive relief and damages.  A true and correct copy of the '815 patent is attached hereto as Exhibit C.

45.    The '815 patent is valid and enforceable.

46.    Regal has directly infringed and is currently directly infringing the '815 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that practice one or more claims of the '815 patent, including but not limited to DCI-compliant equipment suites, and components thereof, and providing services such as showing movies using DCI-compliant equipment suites (herein the "Infringing Products and Services").

47.    As a non-limiting example, Regal has infringed and continues to infringe claim 42 of the '815 patent.  Claim 42 claims as follows:

A method for managing at least one use of a file of electronic data, the method including:

receiving a request to use the file in a predefined manner;

retrieving at least one digital signature and at least one check value associated with the file;

verifying the authenticity of the at least one check value using the digital signature;

verifying the authenticity of at least a portion of the file using the at least one check value; and

granting the request to use the file in the predefined manner.

48.    Regal has infringed and continues to infringe at least claim 42 of the '815 patent through its use of a DCI-compliant equipment suite to show movies and other DCI-compliant content in its movie theaters, insofar as all limitations of this claim correspond to elements in the showing of movies in a movie theater using a DCI-compliant equipment suite.  The CPL is digitally signed and contains check values, comprising at least the KeyID element and the Hash Element of the CPL.  The IMB checks the signature of the CPL.  The Hash Elements are used to verify the essence files of the DCP.

49.    Regal has had actual knowledge of both Intertrust's rights in the '815 patent and details of Regal's infringement of the '815 patent because Intertrust brought the '815 patent to Regal's attention before the filing date of this Complaint, at least by on or about April, 2018.

50.    Regal is not and has never been licensed or otherwise authorized by Intertrust to practice, the claims of the '815 patent.

51.    By reason of Regal's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.  But for Regal's infringement of the '815 patent, Intertrust would have provided Regal with the patented Intertrust technology that Regal needed to implement the Infringing Products and Services and/or licensed the '815 patent to Regal so that Regal could implement these products and services.  As a result of Regal's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Regal, but in no event less than a reasonable royalty.

52.    Regal's continuing acts of infringement are a basis of consumer demand for the Infringing Products and Services.  Regal's continuing acts of infringement are therefore irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Regal's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue.  The public interest would be served by issuance of an injunction.

53.    Regal's infringement of the '815 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

### FOURTH CAUSE OF ACTION
### Infringement of Patent No. 7,340,602

54.    Plaintiff re-alleges and incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

55.    Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 7,340,602 ("the '602 patent"), titled "Systems and methods for authenticating and protecting the integrity of data streams and other data," duly and legally issued by the United States Patent and Trademark Office on March 4, 2008, including the right to bring this suit for injunctive relief and damages.  A true and correct copy of the '602 patent is attached hereto as Exhibit D.

56.    The '602 patent is valid and enforceable.

57.    Regal has directly infringed and is currently directly infringing the '602 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that practice one or more claims of the '602 patent, including but not limited to DCI-compliant equipment suites, and components thereof, and providing services such as showing movies using DCI-compliant equipment suites (herein the "Infringing Products and Services").

58.    As a non-limiting example, Regal has infringed and continues to infringe claim 25 of the '602 patent.  Claim 25 claims as follows:

A method for encoding a block of data in a manner designed to facilitate fault-tolerant authentication comprising:

generating a progression of check values, each check value in the progression being derived from a portion of the block of data and from at least one other check value in the progression;

generating an encoded block of data, comprising:

inserting error-check values into the block of data, each error-check value being inserted in proximity to a portion of the block of data to which it corresponds, and each error-check value being operable to facilitate authentication of a portion of the block of data and of a check value in the progression of check values;

transmitting the encoded block of data and the check values to a user's system,

whereby the user's system is able to receive and authenticate portions of the encoded block of data before the entire encoded block of data is received,

wherein each error-check value comprises a hash of the portion of the block of data to which it corresponds.

59.    Regal has infringed and continues to infringe at least claim 25 of the '602 patent through its use of a DCI-compliant equipment suite to log and distribute log records of showings of movies and other DCI-compliant content in its movie theaters, insofar as all limitations of this claim correspond to elements in the logging and distribution of logs of showings of movies in a movie theater using a DCI-compliant equipment suite.  The logs are generated for the use of participants in the digital content distribution vertical channel.  Each log record includes a check value, namely the hash of the header of the prior log record.  In generating a series of log records, the DCI-compliant equipment suite generates a series of said check values.  The record header comprises a hash of the record body and a hash of the previous record header.  Each log record also includes a hash of the log record body, an error-check value.  The hash of the record body is derived from a portion of the block of data, here the entire block of data, and also from the hash of the prior record header, the prior record header being one other check value in the progression.

60.     Regal has had actual knowledge of both Intertrust's rights in the '602 patent and details of Regal's infringement of the '602 patent because Intertrust brought the '602 patent to Regal's attention before the filing date of this Complaint, at least by on or about April, 2018.

61.     Regal is not and has never been licensed or otherwise authorized by Intertrust to practice, the claims of the '602 patent.

62.     By reason of Regal's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.  But for Regal's infringement of the '602 patent, Intertrust would have provided Regal with the patented Intertrust

technology that Regal needed to implement the Infringing Products and Services and/or licensed the '602 patent to Regal so that Regal could implement these products and services. As a result of Regal's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Regal, but in no event less than a reasonable royalty.

63.     Regal's continuing acts of infringement are a basis of consumer demand for the Infringing Products and Services. Regal's continuing acts of infringement are therefore irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Regal's continuing acts of infringement are enjoined by the Court. The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue. The public interest would be served by issuance of an injunction.

64.     Regal's infringement of the '602 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

## FIFTH CAUSE OF ACTION
### Infringement of Patent No. 7,406,603

65.     Plaintiff re-alleges and incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

66.     Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 7,406,603 ("the '603 patent"), titled "Data protection systems and methods," duly and legally issued by the United States Patent and Trademark Office on July 29, 2008, including the right to bring this suit for injunctive relief and damages. A true and correct copy of the '603 patent is attached hereto as Exhibit E.

67.     The '603 patent is valid and enforceable.

68.     Regal has directly infringed and is currently directly infringing the '603 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that

practice one or more claims of the '603 patent, including but not limited to DCI-compliant equipment suites, and components thereof, and providing services such as showing movies using DCI-compliant equipment suites (herein the "Infringing Products and Services").

69.     As a non-limiting example, Regal has infringed and continues to infringe claim 1 of the '603 patent.  Claim 1 claims as follows:

A method for protecting electronic media content from unauthorized use by a user of a computer system, the method including:

receiving a request from a user of the computer system to use a piece of electronic media content;

identifying one or more software modules responsible for processing the piece of electronic media content and enabling use of the piece of electronic media content by the user;

processing at least a portion of said piece of electronic media content using at least one of the one or more software modules;

evaluating whether the at least one of the one or more software modules process the portion of the electronic media content in an authorized manner, the evaluating including at least one action selected from the group consisting of:

evaluating whether the at least one of the one or more software modules make calls to certain system interfaces;

evaluating whether the at least one of the one or more software modules direct data to certain channels;

analyzing dynamic timing characteristics of the at least one of the one or more software modules for anomalous timing characteristics indicative of invalid or malicious activity;

denying the request to use the piece of electronic media content if the evaluation indicates that the at least one of the one or more software modules fail to satisfy a set of predefined criteria.

70.    Regal has infringed and continues to infringe at least claim 1 of the '603 patent through its use of a DCI-compliant equipment suite to show movies and other DCI-compliant content in its movie theaters, insofar as all limitations of this claim correspond to elements in the showing of movies in a movie theater using a DCI-compliant equipment suite.  The IMB Security Manager identifies all of the secure processing blocks within the DCI-compliant equipment suite and verifies that there is a corresponding digital certificate attesting to their validity and function.  The IMB Security Manager will evaluate whether the processing of the digital content is directed to one of those certain channels permitted by the Trusted Device List and device restrictions enforced by the KDM.

71.    Regal has had actual knowledge of both Intertrust's rights in the '603 patent and details of Regal's infringement of the '603 patent because Intertrust brought the '603 patent to Regal's attention before the filing date of this Complaint, at least by on or about April, 2018.

72.    Regal is not and has never been licensed or otherwise authorized by Intertrust to practice, the claims of the '603 patent.

73.    By reason of Regal's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.  But for Regal's infringement of the '603 patent, Intertrust would have provided Regal with the patented Intertrust technology that Regal needed to implement the Infringing Products and Services and/or licensed the '603 patent to Regal so that Regal could implement these products and services.  As a result of Regal's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Regal, but in no event less than a reasonable royalty.

74.    Regal's continuing acts of infringement are a basis of consumer demand for the Infringing Products and Services.  Regal's continuing acts of infringement are therefore

irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Regal's continuing acts of infringement are enjoined by the Court. The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue. The public interest would be served by issuance of an injunction.

75.     Regal's infringement of the '603 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

### SIXTH CAUSE OF ACTION
### Infringement of Patent No. 7,694,342

76.     Plaintiff re-alleges and incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

77.     Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 7,694,342 ("the '342 patent"), titled "Systems and methods for managing and protecting electronic content and applications," duly and legally issued by the United States Patent and Trademark Office on April 6, 2010, including the right to bring this suit for injunctive relief and damages. A true and correct copy of the '342 patent is attached hereto as Exhibit F.

78.     The '342 patent is valid and enforceable.

79.     Regal has directly infringed and is currently directly infringing the '342 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that practice one or more claims of the '342 patent, including but not limited to DCI-compliant equipment suites, and components thereof, and providing services such as showing movies using DCI-compliant equipment suites (herein the "Infringing Products and Services").

80.     As a non-limiting example, Regal has infringed and continues to infringe claim 1 of the '342 patent. Claim 1 claims as follows:

A method for managing the use of electronic content at a user's computing device, the method including:

executing an application program on the user's computing device, the application program being capable of rendering electronic content, the application program having at least a first digital certificate associated therewith, the first digital certificate being generated by or on behalf of a first entity comprising an association of one or more content providers, the first digital certificate being associated with the application program if the application program meets certain predefined criteria set by the association, the predetermined criteria including that the application program will handle the electronic content with at least a predefined level of security;

requesting the application program to render a piece of electronic content, the piece of electronic content having at least a second digital certificate associated therewith, the second digital certificate being generated by or on behalf of a second entity different from the first entity, and the piece of electronic content further having associated therewith at least one electronic rule, the at least one electronic rule including data specifying one or more conditions associated with rendering the piece of electronic content, the one or more conditions including a condition that the piece of electronic content may be rendered by an application program having the first digital certificate associated therewith;

verifying, at the user's computing device, the association of the second digital certificate with the piece of electronic content;

using a rights management program running on the user's computing device to examine the data included in the at least one electronic rule and to determine that the piece of electronic content may be rendered by an

application program having the first digital certificate associated

therewith;

verifying the association of the first digital certificate with the application

program using the rights management program; and

rendering the piece of electronic content using the application program, wherein

the piece of electronic content comprises an authorizing document, and the

second entity associates the second digital certificate with the authorizing

document if the authorizing document originated from a certified entity.

81.    Regal has infringed and continues to infringe at least claim 1 of the '342 patent through its use of a DCI-compliant equipment suite to show movies and other DCI-compliant content in its movie theaters, insofar as all limitations of this claim correspond to elements in the showing of movies in a movie theater using a DCI-compliant equipment suite.  The KDM includes a condition that the DCI-compliant equipment suite is associated with a digital certificate generated by or on behalf of DCI attesting to the compliance of the DCI-compliant equipment suite with DCI specifications, which represents a determination that the DCI-compliant equipment suite will handle digital movie content with at least a predefined level of security.  DCI comprises an association of six major Hollywood Studios.  The KDM is a digital certificate, insofar as it cryptographically binds the CPL with attributes.  The KDM is generated on or on behalf of the KDM authority, the content owner, or content distributor.

82.    Regal has had actual knowledge of both Intertrust's rights in the '342 patent and details of Regal's infringement of the '342 patent because Intertrust brought the '342 patent to Regal's attention before the filing date of this Complaint, at least by on or about April, 2018.

83.    Regal is not and has never been licensed or otherwise authorized by Intertrust to practice, the claims of the '342 patent.

84.    By reason of Regal's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.  But for Regal's infringement of the '342 patent, Intertrust would have provided Regal with the patented Intertrust

technology that Regal needed to implement the Infringing Products and Services and/or licensed the '342 patent to Regal so that Regal could implement these products and services.  As a result of Regal's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Regal, but in no event less than a reasonable royalty.

85.     Regal's continuing acts of infringement are a basis of consumer demand for the Infringing Products and Services.  Regal's continuing acts of infringement are therefore irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Regal's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue.  The public interest would be served by issuance of an injunction.

86.     Regal's infringement of the '342 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

**SEVENTH CAUSE OF ACTION**
**Infringement of Patent No. 8,191,157**

87.     Plaintiff re-alleges and incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

88.     Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 8,191,157 ("the '157 patent"), titled "Systems and methods for secure transaction management and electronic rights protection," duly and legally issued by the United States Patent and Trademark Office on May 29, 2012, including the right to bring this suit for injunctive relief and damages.  A true and correct copy of the '157 patent is attached hereto as Exhibit G.

89.     Before its expiration, the '157 patent was valid and enforceable.

90.     Regal has directly infringed the '157 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by

and/or attributable to equipment, and or services that practice one or more claims of the '157 patent, including but not limited to DCI-compliant equipment suites, and components thereof, and providing services such as showing movies using DCI-compliant equipment suites (herein the "Infringing Products and Services").

91.     As a non-limiting example, Regal has infringed claim 69 of the '157 patent. Claim 69 claims as follows:

A method performed by an electronic appliance comprising a processor and a memory encoded with program instructions that, when executed by the processor, cause the electronic appliance to perform the method, the method comprising:

receiving, by the electronic appliance, a first piece of electronic content, the first piece of electronic content being encrypted at least in part;

receiving, by the electronic appliance, separately from the first piece of electronic content, a first key, the first key being associated with the first piece of electronic content, and the first key being encrypted at least in part;

decrypting, by the electronic appliance, the first key using (a) a second key and (b) a secure processing unit running on the electronic appliance, the second key being stored in memory of the secure processing unit;

decrypting, by the electronic appliance, the first piece of electronic content using, at least in part, the first key;

receiving, by the electronic appliance, separately from the first piece of electronic content, and via separate delivery, a first electronic object, the first electronic object specifying one or more permitted or prohibited uses of the first piece of electronic content;

receiving, by the electronic appliance, a request to use the first piece of electronic content; and

selectively granting, by the electronic appliance, the request in accordance with the first electronic object.

92.    Regal has infringed at least claim 69 of the '157 patent through its use of a DCI-compliant equipment suite to show movies and other DCI-compliant content in its movie theaters, insofar as all limitations of this claim correspond to elements in the showing of movies in a movie theater using a DCI-compliant equipment suite.  The DCP and the KDM are received separately.  The IMB private key is stored in the secure silicon of the IMB.

93.    Regal has had actual knowledge of both Intertrust's rights in the '157 patent and details of Regal's infringement of the '157 patent because Intertrust brought the '157 patent to Regal's attention before the filing date of this Complaint, at least by on or about April, 2018.

94.    Regal is not and has never been licensed or otherwise authorized by Intertrust to practice, the claims of the '157 patent.

95.    By reason of Regal's infringing activities, Intertrust has suffered substantial damages in an amount to be proven at trial.  But for Regal's infringement of the '157 patent, Intertrust would have provided Regal with the patented Intertrust technology that Regal needed to implement the Infringing Products and Services and/or licensed the '157 patent to Regal so that Regal could implement these products and services.  As a result of Regal's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Regal, but in no event less than a reasonable royalty.

### EIGHTH CAUSE OF ACTION
### Infringement of Patent No. 8,191,158

96.    Plaintiff re-alleges and incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

97.    Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 8,191,158 ("the '158 patent"), titled "Systems and methods for secure transaction management and electronic rights protection," duly and legally issued by the United States Patent and Trademark Office on May 29, 2012, including the right to bring this suit for

injunctive relief and damages.  A true and correct copy of the '158 patent is attached hereto as Exhibit H.

98.    Before its expiration, the '158 patent was valid and enforceable.

99.    Regal has directly infringed the '158 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that practice one or more claims of the '158 patent, including but not limited to DCI-compliant equipment suites, and components thereof, and providing services such as showing movies using DCI-compliant equipment suites (herein the "Infringing Products and Services").

100.    As a non-limiting example, Regal has infringed claim 4 of the '158 patent.  Claim 4 claims as follows:

A method utilizing an electronic appliance comprising a processor and a memory encoded with program instructions that, when executed by the processor, cause the processor to perform the method, the method comprising:

receiving, at the electronic appliance, an electronic content item, the electronic content item being encrypted at least in part;

storing the electronic content item in memory of the electronic appliance;

receiving, at the electronic appliance, independently from the electronic content item via separate delivery and protected separately from the electronic content item, a rule specifying one or more permitted uses of the electronic content item;

receiving, at the electronic appliance, a request to use the electronic content item;

determining that the requested use of the electronic content item corresponds to a permitted use of the electronic content item specified in the rule; and

using, at least in part, a decryption key to decrypt the electronic content item, the decryption key being stored in a secure processing unit contained in the electronic appliance.

101.    Regal has infringed at least claim 4 of the '158 patent through its use of a DCI-compliant equipment suite to show movies and other DCI-compliant content in its movie theaters, insofar as all limitations of this claim correspond to elements in the showing of movies in a movie theater using a DCI-compliant equipment suite.  The DCP and the KDM are received separately.  The IMB private key is stored in the secure silicon of the IMB.

102.    Regal has had actual knowledge of both Intertrust's rights in the '158 patent and details of Regal's infringement of the '158 patent because Intertrust brought the '158 patent to Regal's attention before the filing date of this Complaint, at least by on or about April, 2018.

103.    Regal is not and has never been licensed or otherwise authorized by Intertrust to practice, the claims of the '158 patent.

104.    By reason of Regal's infringing activities, Intertrust has suffered substantial damages in an amount to be proven at trial.  But for Regal's infringement of the '158 patent, Intertrust would have provided Regal with the patented Intertrust technology that Regal needed to implement the Infringing Products and Services and/or licensed the '158 patent to Regal so that Regal could implement these products and services.  As a result of Regal's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Regal, but in no event less than a reasonable royalty.

## NINTH CAUSE OF ACTION
### Infringement of Patent No. 8,526,610

105.    Plaintiff re-alleges and incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

106.    Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 8,526,610 ("the '610 patent"), titled "Methods and Apparatus for Persistent Control and Protection of Content," duly and legally issued by the United States Patent and Trademark Office on September 3, 2013, including the right to bring this suit for injunctive relief and damages.  A true and correct copy of the '610 patent is attached hereto as Exhibit I.

107. The '610 patent is valid and enforceable.

108. Regal has directly infringed and is currently directly infringing the '610 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that practice one or more claims of the '610 patent, including but not limited to DCI-compliant equipment suites, and components thereof, and providing services such as showing movies using DCI-compliant equipment suites (herein the "Infringing Products and Services").

109. As a non-limiting example, Regal has infringed and continues to infringe claim 1 of the '610 patent.  Claim 1 claims as follows:

A streaming media player providing content protection and digital rights management, including:

> a port configured to receive a digital bit stream, the digital bit stream including:
>> content which is encrypted at least in part, and
>
> at least one secure container including control information, the control
>> information including one or more rules for controlling at least one aspect of access to or use of the content and for selectively determining whether to proceed with a decrypting step and comparing a system identifier included in the control information with an identifier associated with the player, the secure container further including at least one key suitable for decryption of at least a portion of the content; and
>
> a control arrangement including:
>
> a processor and a non-transitory computer-readable storage medium including
>> program code, the program code being operable, when executed by the processor for opening the at least one secure container and extracting the at least one key; and
>
> a stream controller operatively connected to receive the at least one key, the
>> stream controller further decrypting at least a portion of the encrypted

content based on the at least one key and when allowed by the one or more rules.

110.    Regal has infringed and continues to infringe at least claim 1 of the '610 patent through its use of a DCI-compliant equipment suite to show movies and other DCI-compliant content in its movie theaters, insofar as all limitations of this claim correspond to elements in the showing of movies in a movie theater using a DCI-compliant equipment suite.

111.    Regal has had actual knowledge of both Intertrust's rights in the '610 patent and details of Regal's infringement of the '610 patent because Intertrust brought the '610 patent to Regal's attention before the filing date of this Complaint, at least by on or about April, 2018.

112.    Regal is not and has never been licensed or otherwise authorized by Intertrust to practice, the claims of the '610 patent.

113.    By reason of Regal's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.  But for Regal's infringement of the '610 patent, Intertrust would have provided Regal with the patented Intertrust technology that Regal needed to implement the Infringing Products and Services and/or licensed the '610 patent to Regal so that Regal could implement these products and services.  As a result of Regal's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Regal, but in no event less than a reasonable royalty.

114.    Regal's continuing acts of infringement are a basis of consumer demand for the Infringing Products and Services.  Regal's continuing acts of infringement are therefore irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Regal's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue.  The public interest would be served by issuance of an injunction.

115.    Regal's infringement of the '610 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

## TENTH CAUSE OF ACTION
### Infringement of Patent No. 8,931,106

116.    Plaintiff re-alleges and incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

117.    Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 8,931,106 ("the '106 patent"), titled "Systems and methods for managing and protecting electronic content and applications," duly and legally issued by the United States Patent and Trademark Office on January 6, 2015, including the right to bring this suit for injunctive relief and damages.  A true and correct copy of the '106 patent is attached hereto as Exhibit J.

118.    The '106 patent is valid and enforceable.

119.    Regal has directly infringed and is currently directly infringing the '106 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that practice one or more claims of the '106 patent, including but not limited to DCI-compliant equipment suites, and components thereof, and providing services such as showing movies using DCI-compliant equipment suites (herein the "Infringing Products and Services").

120.    As a non-limiting example, Regal has infringed and continues to infringe claim 17 of the '106 patent.  Claim 17 claims as follows:

A method for managing the use of electronic content at a computing device, the method including:

receiving a piece of electronic content;

receiving, separately from the piece of electronic content, data specifying one or
more conditions associated with rendering the piece of electronic content,
the one or more conditions including a condition that the piece of

electronic content be rendered by a rendering application associated with a first digital certificate;

executing a rendering application on the computing device, the rendering application being associated with at least the first digital certificate, the first digital certificate having been generated by a first entity based at least in part on a determination that the rendering application will handle electronic content with at least a predefined level of security;

requesting, through a rights management engine executing on the computing device, permission for the rendering application to render the piece of electronic content;

determining, using the rights management engine, whether the one or more conditions specified by the data have been satisfied;

decrypting the piece of electronic content; and

rendering the decrypted piece of electronic content using the rendering application.

121.   Regal has infringed and continues to infringe at least claim 17 of the '106 patent through its use of a DCI-compliant equipment suite to show movies and other DCI-compliant content in its movie theaters, insofar as all limitations of this claim correspond to elements in the showing of movies in a movie theater using a DCI-compliant equipment suite. The KDM and the digital content are separately received. The KDM includes a condition that the DCI-compliant equipment suite is associated with a digital certificate generated by or on behalf of DCI attesting to the compliance of the DCI-compliant equipment suite with DCI specifications, which represents a determination that the DCI-compliant equipment suite will handle digital movie content with at least a predefined level of security.

122.   Regal has had actual knowledge of both Intertrust's rights in the '106 patent and details of Regal's infringement of the '106 patent because Intertrust brought the '106 patent to Regal's attention before the filing date of this Complaint.

123.    Regal is not and has never been licensed or otherwise authorized by Intertrust to practice, the claims of the '106 patent.

124.    By reason of Regal's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.  But for Regal's infringement of the '106 patent, Intertrust would have provided Regal with the patented Intertrust technology that Regal needed to implement the Infringing Products and Services and/or licensed the '106 patent to Regal so that Regal could implement these products and services.  As a result of Regal's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Regal, but in no event less than a reasonable royalty.

125.    Regal's continuing acts of infringement are a basis of consumer demand for the Infringing Products and Services.  Regal's continuing acts of infringement are therefore irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Regal's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue.  The public interest would be served by issuance of an injunction.

126.    Regal's infringement of the '106 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

## ELEVENTH CAUSE OF ACTION
### Infringement of Patent No. 9,569,627

127.    Plaintiff re-alleges and incorporates by reference each of the allegations in the foregoing paragraphs as though fully set forth herein.

128.    Intertrust is the current exclusive owner and assignee of all right, title, and interest in and to U.S. Patent No. 9,569,627 ("the '627 patent"), titled "Systems and methods for governing content rendering, protection, and management applications," duly and legally issued by the United States Patent and Trademark Office on February 14, 2017, including the right to

bring this suit for injunctive relief and damages.  A true and correct copy of the '627 patent is attached hereto as Exhibit K.

129.    The '627 patent is valid and enforceable.

130.    Regal has directly infringed and is currently directly infringing the '627 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that practice one or more claims of the '627 patent, including but not limited to DCI-compliant equipment suites, and components thereof, and providing services such as showing movies using DCI-compliant equipment suites (herein the "Infringing Products and Services").

131.    As a non-limiting example, Regal has infringed and continues to infringe claim 1 of the '627 patent.  Claim 1    claims as follows:

A method performed by a system comprising a processor and a non-transitory computer-readable storage medium storing instructions that, when executed by the processor, cause the system to perform the method, the method comprising:

receiving, by a secure control application executing on the system in a protected processing environment, a request to access protected content by a governed application executing on the system in a processing environment separate from the protected processing environment;

extracting, by the secure control application, secret information from a secure electronic container, the secret information being configured to be used, at least in part, to decrypt the protected content, wherein extracting the secret information comprises decrypting at least a portion of the secure electronic container to generate unencrypted secret information; and

sending, by the secure control application, the unencrypted secret information from the protected processing environment to the governed application executing in the processing environment separate from the protected processing environment.

132.    Regal has infringed and continues to infringe at least claim 1 of the '627 patent through its use of a DCI-compliant equipment suite to show movies and other DCI-compliant content in its movie theaters, insofar as all limitations of this claim correspond to elements in the showing of movies in a movie theater using a DCI-compliant equipment suite.  The IMB Security Manager is a processing environment with a higher security level than the Media Decryptor, at least insofar as the Security Manager has access to the IMB key used for access to the content keys, and the Media Decryptor does not have access to the IMB key.

133.    Regal has had actual knowledge of both Intertrust's rights in the '627 patent and details of Regal's infringement of the '627 patent because Intertrust brought the '627 patent to Regal's attention before the filing date of this Complaint, at least by on or about April, 2018.

134.    Regal is not and has never been licensed or otherwise authorized by Intertrust to practice, the claims of the '627 patent.

135.    By reason of Regal's infringing activities, Intertrust has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.  But for Regal's infringement of the '627 patent, Intertrust would have provided Regal with the patented Intertrust technology that Regal needed to implement the Infringing Products and Services and/or licensed the '627 patent to Regal so that Regal could implement these products and services.  As a result of Regal's infringement, Intertrust has been damaged in an amount equal to the loss of profits that would otherwise have accrued to Intertrust from providing its patented technology to Regal, but in no event less than a reasonable royalty.

136.    Regal's continuing acts of infringement are a basis of consumer demand for the Infringing Products and Services.  Regal's continuing acts of infringement are therefore irreparably harming and causing damage to Intertrust, for which Intertrust has no adequate remedy at law, and will continue to suffer such irreparable injury unless Regal's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Intertrust should an injunction not issue.  The public interest would be served by issuance of an injunction.

137.    Regal's infringement of the '627 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.

## PRAYER FOR RELIEF

WHEREFORE, Intertrust respectfully requests the following relief:

A.    A judgment that Regal has infringed (and, for the patents that have not expired, is infringing) each and every one of the Asserted Patents;

B.    A preliminary and permanent injunction against Regal, its respective officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from infringement, inducement of infringement, and contributory infringement of each and every one of the Asserted Patents, including but not limited to an injunction against making, using, selling, and/or offering for sale within the United States, and/or importing into the United States, any products and/or services that infringe the Asserted Patents;

C.    Lost profit damages resulting from Regal's infringement of the Asserted Patents;

D.    A reasonable royalty for Regal's use of Intertrust's patented technology, as alleged herein;

E.    Prejudgment interest;

F.    Post-judgment interest;

G.    A judgment holding Regal's infringement of the Asserted Patents to be willful, and a trebling of damages pursuant to 35 U.S.C. § 284;

H.    A declaration that this Action is exceptional pursuant to 35 U.S.C. § 285, and an award to Intertrust of its attorneys' fees, costs and expenses incurred in connection with this Action; and

I.    Such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: August 7, 2019

*/s/ Harold A. Barza w/permission Andrea Fair*
Harold A. Barza (CA Bar No. 80888)
(*Pro hac vice application forthcoming*)
halbarza@quinnemanuel.com
Tigran Guledjian (CA Bar No. 207613)
(*Pro hac vice application forthcoming*)
tigranguledjian@quinnemanuel.com
Bruce R. Zisser (CA Bar No. 180607)
(*Pro hac vice application forthcoming*)
brucezisser@quinnemanuel.com
Jordan B. Kaericher (CA Bar No. 265953)
(*Pro hac vice application forthcoming*)
jordankaericher@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Phone:  (213) 443-3000
Fax:  (213) 443-3100+

Of Counsel:
T. John Ward, Jr.
Texas State Bar No. 00794818
E-mail: jw@wsfirm.com
Claire Abernathy Henry
Texas State Bar No. 24053063
E-mail: claire@wsfirm.com
Andrea L. Fair
State Bar No. 24078488
Email: andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
PO Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

***Counsel for Plaintiff Intertrust Technologies
Corporation***

Complaint for Patent Infringement